# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 24-299V

| | |
|---|---|
| ANN KAISER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 2, 2026 |

*Renee J. Gentry*, Vaccine Injury Clinic, George Washington University Law School, Washington, D.C., for Petitioner.

*Alyssa M. Petroff*, U.S. Department of Justice, Washington, DC, for Respondent.

### **FACT RULING ON ONSET**[1]

On February 26, 2024, Ann Kaiser filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 5, 2021. *See* Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I.  **Relevant Procedural History**

Though the parties made a tentative effort to settle this claim, they were ultimately unsuccessful. ECF Nos. 17-18, 20-24. Respondent filed his Rule 4(c) Report on June 9, 2025, arguing that the medical records do not preponderantly establish the alleged injury began within 48 hours of the subject vaccination, as required for a Table SIRVA. *Id.* at 6 (internal citations omitted). Petitioner has not filed any documents in response. The issue of onset is ripe for resolution.

II.  **Authority**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Relevant Factual Evidence

I make this finding of fact after a complete review of the record, including all medical records, declarations, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject flu vaccine in her right deltoid on October 5, 2021, at a local hospital while at a visit with her son. Ex. 1 at 3.

- On October 25, 2021 (20 days post vaccination), Petitioner saw her primary care provider ("PCP") for an injury to her nose. Ex. 2 at 15. She reported that her son had "hit her in the nose[;]" she thus had some soreness and swelling. *Id.* Petitioner did not report shoulder pain at this visit.

- The next day (October 26, 2021), Petitioner went to an ear nose and throat specialist for consultation regarding a possible nasal fracture. Ex. 8 at 3. She likewise did not report shoulder complaints at this visit.

- Approximately 27 days post vaccination, on November 1, 2021, Petitioner had a visit with her PCP for a complaint of "pain in the arm." Ex. 2 at 12. Petitioner reported she had "a flu shot 4 weeks ago" and the nurse told her that she "'thinks she hit something.'" *Id.* at 14. Petitioner stated she "has

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

3

had persistent pain," plus pain with range of motion ("ROM") and laying on her side. *Id.*

- Petitioner underwent an MRI of the right shoulder on December 4, 2021. Ex. 2 at 33. She reported her history of "[l]ateral right shoulder pain since getting a flu shot two months ago." *Id.* The findings were "presumably related to the recent vaccine administration [(SIRVA)]." *Id.*

- On December 17, 2021, Petitioner had an appointment for right shoulder and wrist pain with a sports medicine specialist. Ex. 4 at 37. Petitioner reported the pain had been present "since early October." *Id.* She did not describe an injury, but added that "her pain did start shortly after [sic] . . . ." *Id.* The treater's impression was chronic right shoulder pain, and he referred Petitioner for physical therapy ("PT"). *Id.* at 39.

- Petitioner began PT on December 23, 2021. Ex. 4 at 62. Petitioner reported a "2.5 month history of [right] shoulder pain and [dysfunction] following a vaccine in early October." *Id.* at 63. The "mechanism of injury" was listed as "flu vaccine," and the "duration" was noted to be "2.5 months." *Id.* at 62. Despite these entries, there is a separate notation listing the onset date as "12/01/2021." *Id.*

- On August 19, 2022, Petitioner sought a second opinion with another orthopedist regarding her shoulder pain. Ex. 5 at 14. Petitioner reported her "shoulder pain began in October 2021 after she received a flu shot in the arm." *Id.* Petitioner denied previous right shoulder pain "prior to October 2021." *Id.* The treater's assessment included a notation that Petitioner's right shoulder pain "started in October 2021 after a flu shot." *Id.* at 15.

- Petitioner has filed a signed declaration in support of her claim. Petitioner recalls her October 5, 2021 vaccination being "extremely painful." Ex. 19 at 1. She states the nurse who administered the shot "may have given it too high given how much it hurt" and she specifically remembers the nurse saying, "'I think I hit something.'" *Id.* In the past, she recalls it "usually takes a day or two for [her] arm to feel normal." *Id.* at 2. As a result, she "expected [her] arm to improve" but instead it "got worse." *Id.* Specifically, she describes stabbing pain with movement and difficulties with activities of daily living, including dressing, washing, holding her young son, and with wearing a backpack while hiking. *Id.*

4

- Additionally, Petitioner attests that on October 28, 2021, she had a follow-up appointment for her son in the same doctor's office where she received the flu vaccine. Ex. 19 at 2. Petitioner contends that she mentioned her shoulder pain during this visit, and the "office manager came out . . . and did a brief examination." *Id.* She asserts that the office manager asked the name of Petitioner's PCP and advised she would reach out for an appointment on Petitioner's behalf. *Id.* Despite Petitioner's assertions, there is no evidence of this encounter in the contemporaneous medical records.

- No other medical record or declaration evidence regarding the onset of Petitioner's post-vaccination shoulder injury has been filed.

## IV.  Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset of pain within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B); 42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria). As noted, Respondent contends that Petitioner cannot establish this criterion because she had two intervening medical encounters in the month of October 2021, without mentioning shoulder pain, and did not complain of right shoulder pain until nearly one month post-vaccination. Rule 4(c) Report at 6 (internal citations omitted). And when she did report pain, she did not describe onset within 48 hours of vaccination. *Id.* Respondent also asserts that Petitioner's alleged report of her pain to a treater on October 28, 2021, is unsupported by the records. *Id.*

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that she sought treatment within *one month* of the vaccination, and that she indeed was experiencing symptoms.

The fact that Petitioner sought treatment within one month of the subject vaccination (on November 1, 2021), actually helps Petitioner in establishing Table-consistent onset. In other cases, even *much greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

In fact, some delay in seeking treatment itself is never *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she "expected [her] arm to improve" within a few days but instead the pain "got worse." Ex. 19 at 2.

Likewise, the fact that Petitioner sought care on two occasions post-vaccination without mentioning right shoulder pain does not fully detract from her arguments on onset. For instance, Petitioner's visits on October 25-26, 2021, were for an acute issue – a nasal fracture – and/or were with a specialist for this issue. *See,* e.g., Ex. 2 at 15 (an October 25th PCP visit for nasal soreness and swelling after being hit in the face by her son); Ex. 8 at 3 (an October 26th visit with an ear, nose, and throat specialist for assessment of a possible nasal fracture). It was reasonable that Petitioner did not bring up shoulder-related complaints during those visits.[4]

In addition, Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the November 1, 2021 treatment encounter, at which time she reported pain in the right arm after she had "a flu shot 4 weeks ago," and the nurse told her that she "'thinks she hit something.'" Ex. 2 at 12. Although this entry does not preponderantly support Table onset on its own, other subsequent medical records consistently corroborate this entry with more detail and thus provide support for a two-day onset showing. *See,* e.g., Ex. 2 at 33 (a December 4, 2021 history taken during an MRI, stating "[l]ateral right shoulder pain since getting a flu shot two months ago."); Ex. 4 at 62-63 (a December 23, 2021 PT visit reporting a "2.5 month history of [right] shoulder pain and [dysfunction] following a vaccine in early October" with a listed mechanism of "flu vaccine" and a "duration" of "2.5 months."); Ex. 5 at 14 (an August 19, 2022 orthopedic visit reporting "shoulder pain [that] began in October 2021 after she received a flu shot in the arm.").

Admittedly, at least one of Petitioner's records suggest an onset beginning at some unspecified time in "October 2021" without specifically mentioning the flu vaccine. *See* Ex. 4 at 37 (a December 17, 2021 report of pain present "since early October" and that the pain "start[ed] shortly after [sic] . . . ."). But I do not find this evidence alone negates Petitioner's earlier reports supportive of an onset around October 5, 2021, as it is

---

[4] More so, I do not find the lack of record support for Petitioner's contentions regarding her October 28th examination and affiliated complaints to be dispositive on the issue of onset in light of the existing record. Specifically, Petitioner still sought care for vaccine-related shoulder complaints approximately four days later and within one month of vaccination – factors supportive of Table-consistent onset.

otherwise consistent with her other reports of pain beginning in October 2021 and provides further support for onset within two days of vaccination.

Finally, while there is one record entry (from Petitioner's December 23, 2021 PT visit) containing a notation listing the onset date as "12/01/2021," this entry is insufficient to overcome the bulk of evidence that favors Petitioner on onset. In fact, the same record includes two separate descriptions of her pain being present for "2.5 months," following a vaccination in early October. Ex. 4 at 62-63. The contemporaneous medical records thus establish that the onset of Petitioner's injury occurred within the timeframe required by the Table.

## Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I encourage the parties to make a final re-attempt at informal resolution (of settlement or damages). **Respondent shall file, by no later than <u>Monday, February 02, 2026</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

In the event Respondent is open to informal resolution of either settlement or damages, and to aid in those discussions, the parties should keep in mind that the record supports a mild injury overall, requiring fairly conservative treatment for a limited duration. Petitioner participated in five PT sessions, received two injections, did not undergo surgery; and by April 2022, she acknowledged using her rowing machine. *See,* e.g., Ex. 4 at 43-45, 50-62; Ex. 5 at 14. Petitioner should thus not expect more than a modest award, even at full value of this case.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master